FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 30, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PIERRE T., | No. 4:19-CV-05015-JTR |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 19, 21. Attorney Kevin J. Margado represents Pierre T. (Plaintiff); Special Assistant United States Attorney Alexis Toma represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **DENIES** Plaintiff's Motion for Summary

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER GRANTING DEFENDANT'S MOTION - 1

Judgment and **GRANTS** Defendant's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) on May 5, 2015, Tr. 743, alleging disability since April 1, 2015, Tr. 839, due to stage three colon cancer and posttraumatic stress disorder (PTSD), Tr. 861. The application was denied initially and upon reconsideration. Tr. 766-69, 773-79. Administrative Law Judge (ALJ) Keith Allred held a hearing on July 31, 2017 and heard testimony from Plaintiff and vocational expert Doug Lear. Tr. 703-42. The ALJ issued an unfavorable decision on January 19, 2018. Tr. 21-36. The Appeals Council denied review on November 30, 2018. Tr. 1-6. The ALJ's January 19, 2018 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Plaintiff filed this action for judicial review on January 29, 2019. ECF No. 1.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 47 years old at the date of application. Tr. 839. The highest grade Plaintiff completed was the tenth in 1985. Tr. 862. His reported work history includes the position of dishwasher at a restaurant and laborer for a temporary employment service. *Id*. When applying for benefits Plaintiff reported that he stopped working on February 1, 2011 because he was let go by his employer. Tr. 861.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d

1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. § 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work, and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the

national economy, he is found "disabled." 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On January 19, 2018, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act from May 5, 2015 through the date of the decision.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 5, 2015, the date of application. Tr. 24.

At step two, the ALJ determined that Plaintiff had the following severe impairments: colon cancer; emphysema; cardiomyopathy; anxiety disorder; and substance abuse and addiction disorder. Tr. 24.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 25.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of light work with the following limitations:

> [T]he claimant can lift and carry 20 pounds occasionally and ten pounds frequently. He can sit for six hours in an eight-hour workday and stand or walk for six hours in an eight-hour workday with normal rest breaks. He can occasionally climb ramps or stairs, balance, stoop, bend, squat, kneel, crouch, crawl, and climb ladders, ropes or scaffolds. The claimant is able to perform the basic mental demands of competitive, remunerative, unskilled work, including the ability to understand, carry out, and remember simple instructions. He can respond appropriately to supervision, co-workers, and usual work situations, and can deal with changes in a routine work setting. The claimant can perform work that involves occasional interaction with the general public. The claimant can tolerate occasional exposure to pulmonary irritants.

Tr. 27-28. The ALJ found that Plaintiff did not have any past relevant work. Tr. 34.

At step five, the ALJ determined that, considering Plaintiff's age, education,

work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of garment folder, inspector hand packager, and electric accessories assembler. Tr. 35. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act from May 5, 2015, through the date of the ALJ's decision. Tr. 36.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the Appeals Council erred by excluding additional evidence submitted following the ALJ's decision. ECF No. 19 at 4-6. Plaintiff also asserts that the ALJ erred by not properly weighing the opinions of John Haroian, Ph.D. and Daniel Neims, Psy.D., by not considering his skin condition as a severe impairment at step two, by making a flawed residual functional capacity determination, and by issuing an opinion that was not supported by substantial evidence. ECF No. 19 at 6-14.

## DISCUSSION

### 1. Evidence Submitted to the Appeals Council

Plaintiff argues that the Appeals Council erred by excluding additional medical evidence from Coyote Ridge Corrections. ECF No. 19 at 5.

Following an unfavorable decision by an ALJ, a claimant may request that the Appeals Council review the decision. 20 C.F.R. § 416.1467. "The Appeals Council may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to an administrative law judge." *Id*. The Appeals Council "will review a case . . . if [s]ubject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of

the decision." 20 C.F.R. § 416.1470(a)(5). Paragraph (b) states the Appeals Council will only consider additional evidence under paragraph (a)(5) if a claimant shows good cause for not informing the agency or submitting the evidence prior to the ALJ hearing as required in 20 C.F.R. § 416.1435. 20 C.F.R. § 416.1470(b).

Following the ALJ's January 19, 2018 unfavorable decision, Plaintiff filed a request for review by the Appeals Council. Tr. 835. Plaintiff then submitted medical evidence from Coyote Ridge Corrections ranging from May 10, 2011 to May 16, 2018 to the Appeals Council. Tr. 2. The Appeals Council denied Plaintiff's request for review and did not exhibit the newly submitted medical evidence from Coyote Ridge Corrections for the following reasons: (1) records from May 11, 2015 through May 22, 2017 were not exhibited because they were duplicates of Exhibits 2F, 3F, and 8F; (2) records from June 28, 2007 through May 11, 2010 were not exhibited because they were "not material because it is not relevant to your claim for disability"; (3) records from June 6, 2017 through January 16, 2018 were not exhibited because "[w]e find this evidence does not show a reasonable probability that it would change the outcome of the decision"; and (4) records from January 22, 2018 through May 16, 2018 were not exhibited because they do "not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 19, 2018." Tr. 2. Plaintiff argues that the Appeals Council erred by not exhibiting records from June 6, 2017 to May 16, 2018 (date ranges addressed in the Appeals Council Decision reasons 3 and 4). ECF No. 19 at 5. Plaintiff does not challenge the Appeals Council's decision to not exhibit the other medical evidence from Coyote Ridge Corrections. *Id*.

Defendant argues that this Court lacks jurisdiction over the Appeals Council's actions. ECF No. 21 at 7. The Ninth Circuit has held that district courts do not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision because the Appeals Council decision is a

non-final agency action. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) *citing Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). When the Appeals Council denies a request for review, the ALJ's decision becomes the final decision of the Commissioner and the district court reviews the ALJ's decision for substantial evidence based upon the record as a whole. *Id*. at 1161-62. "[T]he administrative record includes evidence submitted to and considered by the Appeals Council." *Id*. at 1162. When the Appeals Council fails to "consider" additional evidence that meets the requirements set forth in 20 C.F.R. § 416.1470(b), remand to the ALJ is appropriate. *Taylor*, 659 F.3d at 1233 (referencing 20 C.F.R. § 404.970(b), which is the Title II counterpart to 20 C.F.R. § 416.1470(b)). Therefore, whether or not the Appeals Council "considered" new evidence dictates whether or not a remand is appropriate. *See Brewes*, 682 F.3d at 1162 ("the final decision of the Commissioner includes the Appeals Council's denial of review, and the additional evidence considered by that body is 'evidence upon which the findings and decision complained of are based'"); *see Amor v. Berryhill*, 743 F. App'x 145, 146 (9th Cir. 2018) ("here the Appeals Council only looked at the evidence, and determined it did not meet the standard for consideration," and therefore, "the new evidence did not become part of the record, and we may not consider it").

      This Court joins others in finding that it is not clear how the Appeals Council determined that the new evidence would not impact the outcome of the ALJ's decision while simultaneously not considering it and not associating it with the record. *McLaughlin v. Saul*, No. 1:18-cv-00967-SKO, 2019 WL 3202806, at *5 (E.D. Cal. July 16, 2019) *citing Deliny S. v. Berryhill*, No. CV 17-06328-DFM, 2019 WL 1259410, at *1 (C.D. Cal. Mar. 19, 2019) and *Mayeda-Williams v. Comm'r of Soc. Sec. Admin.*, No. 18-0009-HRH, 2019 WL 157918, at *5 (D. Ak. Jan. 10, 2019); *Lena J. v. Comm'r of Soc. Sec. Admin.*, No. C18-6007-RLB-BAT, 2019 WL 3291039, at *3 (W.D. Wash. July 1, 2019). Therefore, the Appeals

Council should have exhibited the evidence as part of the administrative record. Nonetheless, while the records are not assigned an exhibit number, they are incorporated with the administrative record filed before this Court. *See* ECF No. 15.

The Court notes that Plaintiff makes the argument that he met the good cause standard under 20 C.F.R. § 416.1470(b). ECF No. 19 at 5. However, Defendant argues that the evidence has been associated with the administrative record. ECF No. 21 at 6-7. Therefore, Defendant concedes the issue of good cause under 20 C.F.R. § 416.1470(b), and the Court need not address it further.

The Court must now consider whether the ALJ's decision is supported by substantial evidence considering the record as a whole, including the records from Coyote Ridge Corrections from June 6, 2017 to May 16, 2018.

**2. Step Two**

Plaintiff challenges the ALJ's step two determination that did not address Plaintiff's skin impairment. ECF No. 19 at 9-12.

The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. § 416.922(a). Basic work activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.922(b). T

To show a severe impairment, the claimant must first establish the existence of a medically determinable impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment. 20 C.F.R. § 416.921. "[O]nce a claimant has shown that he suffers from a medically determinable impairment, he next has the burden of proving that these impairments and their symptoms affect his ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir.

2001). At step two, the burden of proof is squarely on the Plaintiff to establish the existence of any medically determinable impairment(s) and that such impairments(s) are severe. *Tackett*, 180 F.3d at 1098-99 (In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.).

The ALJ's decision did not address cellulitis or dermatitis, but it did mention the presence of intermittent rashes when discussing the residual functional capacity determination. Tr. 30.

The record before the ALJ demonstrated recurrent rashes and the diagnosis of methicillin-resistant staphylococcus aureus (MRSA) during treatment for his colon cancer. On October 30, 2015, lesions were present on his skin at his oncology appointment. Tr. 1147, 1369. On March 18, 2016, he complained about an erythematous rash on the skin of the axilla, chest wall, and sometimes scalp. Tr. 1396. On examination there were "maculopapuiar rashes present with mild intensity on the sternum and upper arm. There are erythematous crops of lesions present in the axilla," and no lesions on his scalp. *Id*. On March 21, 2016 his skin rash prevented him from continuing his chemotherapy. Tr. 1399. By March 22, 2016, it was noted that his skin condition had improved. Tr. 1398. On March 29, 2016, the rashes were gone. Tr. 1404. On May 6, 2016 his rash had returned. Tr. 1415-16. On May 8, 2016 Plaintiff presented for wound care, the open sores on his back were swabbed, and the lab confirmed that MRSA was present. Tr. 1325, 1418. On May 10, 2016, he presented with a lesion on his left upper inner thigh and a swab showed squamous epithelial cells. Tr. 1326, 1422. On June 17, 2016, the lesions were still present on his back and thigh. Tr. 1425. On November 18, 2016, Plaintiff had a lesion on his back consistent with foliculitis. Tr. 1433. On December 27, 2016, Plaintiff had lesions on his back and upper thigh. Tr. 1438. In January of 2017, his "entire skin exam did not reveal abscess signs of cellulitis." Tr. 1475. By February 3, 2017, the lesions were present on his bilateral

legs, the center part of his chest, and the upper part of his arms. Tr. 1442. Additionally, MRSA was confirmed in the lesions on his back. Tr. 1441. On April 3, 2017, Plaintiff reported that the rashes he was treated for in February were gone. Tr. 1444. He reported a new rash on his scalp and was referred to dermatology. Tr. 1446. On May 22, 2017, Plaintiff had a rash on the dorsum of the left foot that was spreading between the first and second toe. Tr. 1449.

Plaintiff cites to several locations in the evidence submitted to the Appeals Council in support of his assertion of a step two error. ECF No. 19 at 9-12. This Court must review the ALJ's decision for substantial evidence based upon the record as a whole. *Brewes*, 682 F.3d at 1161-62. However, Plaintiff only asserted that evidence from Coyote Ridge Corrections from June 6, 2017 to May 16, 2018 needed to be associated with the record. ECF No. 19 at 5. In his briefing, he pointed to records from June 2007, Tr. 675, 677, December 2008, Tr. 672, April 2009, Tr. 559, 589, May 2009, Tr. 367, June 2010, Tr. 583, February 3, 2017, Tr. 300, and June 5, 2017, Tr. 309-10. ECF No. 19 at 10-11. All of this is outside the period he asserted should have been considered and associated with the record.

The records he cites within the period of June 6, 2017 to May 16, 2018 demonstrate continued rash on his left foot, neck, and arms. *See* ECF No. 19 at 11 *citing* Tr. 312-13 (July 17, 2017 exam stating the rash sounds like a "superficial fungal infection"); Tr. 315 (May 21, 2018 request for treatment because he was breaking out in blisters on his back neck and arms); Tr. 578 (December 3, 2017 lab report confirming MRSA). He also points to photos of his arms taken in March of 2018, Tr. 604-06, and from an undated visit, Tr. 637-48. ECF No. 19 at 11. While the rashes continued to appear for a period longer than 12 months, the record fails to demonstrate any functional limitation stemming from the rashes.

Plaintiff further asserts that his MRSA diagnosis prevents him from being employed in the food service industry. ECF No. 19 at 11. However, the transfer form he cites as evidence of this limitation is dated April 30, 2012 for an upcoming

transfer on May 2, 2012, Tr. 366, which is outside the period of time he asserted his Coyote Ridge Corrections records should be associated with the administrative record, and it does not state why this preclusion from food service exists. Tr. 366. The next page discusses his diagnosis of MRSA, but that was for a transfer date of May 1, 2009, Tr. 367, so it is not associated with the April 30, 2012 transfer form.

Plaintiff had the burden of proving that his skin condition was a severe medically determinable impairment. While the above records show that the repeated rashes are medically determinable, he has failed to demonstrate that they are severe because there is no evidence in the record of any functional limitations stemming from the repeated rashes.

Furthermore, the ALJ addressed the presence of repeated rashes when discussing the residual functional capacity determination: "While the claimant's infections may cause some limitations, the record does not show that they would prevent him from working at the light level of exertion with the additional restrictions specified above [in the residual functional capacity]." Tr. 30. Therefore, any potential error from not discussing the repeated rashes at step two is harmless. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error by ALJ at step two was harmless because the step was resolved in the claimant's favor).

**2.      Medical Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by John Haroian, Ph.D. and Daniel Neims, Psy.D. ECF No. 19 at 6-9.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more

weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.* When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31.

Defendant argues that the lesser standard of specific and legitimate is applicable in this case. ECF No. 21 at 7-8. However, the record only contains the psychological opinions of Dr. Haroian, Dr. Neims, Dr. Van Dam, and Dr. Robinson. Neither nonexamining psychologists, Dr. Van Dam or Dr. Robinson, provided a mental residual functional capacity opinion such as Dr. Haroian and Dr. Neims. Tr. 474, 756-57. Dr. Van Dam found Plaintiff's substance abuse disorder to be severe. Tr. 474. Dr. Robinson found there to be insufficient evidence to evaluate the severity of Plaintiff's anxiety related disorders and substance addiction disorder. Tr. 756-57. Therefore, the mental residual functional opinion provided by Dr. Haroian and Dr. Neims is uncontradicted in the record, and the clear and convincing standard is applicable.

A. **John Haroian Ph.D.**

On August 25, 2014, Dr. Haroian completed a Psychological/Psychiatric Evaluation for the Washington Department of Social and Health Services (DSHS). Tr. 921-32. He diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, adult antisocial behavior, and a rule out of borderline intellectual functioning. Tr. 922. He opined that Plaintiff had a marked limitation in five of the basic work activities and a moderate limitation in seven of the basic work activities. Tr. 923. He opined that Plaintiff's limitations would continue at this severity with available treatment for twelve months. Tr. 924. The ALJ gave the

opinion "little weight" for three reasons: (1) Dr. Haroian's findings and opinions were inconsistent with Plaintiff's treatment records; (2) Dr. Haroian's findings and opinions were inconsistent with Plaintiff's demonstrated abilities; and (3) the opinion was predicated on misrepresentations by Plaintiff.  Tr. 33.

The ALJ's first reason for rejecting the opinion, that Dr. Haroian's findings were inconsistent with Plaintiff's treatment records, is not clear and convincing. Inconsistency with the majority of objective evidence is a specific and legitimate reason for rejecting physician's opinions. *Batson*, 359 F.3d at 1195.  Here, the ALJ found that "Dr. Haroian's findings and opinions are inconsistent with the claimant's treatment records," but failed to cite any treatment records that undermined the opinion.  Tr. 33.  Therefore, this reason falls short of the lessor specific and legitimate standard and does not rise to a clear and convincing reason. However, any error resulting from this reason is harmless because the ALJ provided other legally sufficient reasons for rejecting the opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

The ALJ's second reason for rejecting the opinion, that Dr. Haroian's findings were inconsistent with Plaintiff's demonstrated abilities, includes two examples of Plaintiff's activities, and one of the two examples is clear and convincing.  The Ninth Circuit has found that a conflict between a physician's opinion and a claimant's reported activities to be a specific and legitimate reason to reject the opinion. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999).  The Ninth Circuit suggests this is also sufficient to meet the clear and convincing standard if the ALJ explains his rationale. *See Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir., 2017) (finding that the ALJ did not meet the clear and convincing standard because he failed to explain how the reported activities were inconsistent with the opined limitations).  The ALJ's first example was that

"the claimant was able to work as a waiter, a job that involves constant public interaction, at a level that was satisfactory to his employer, and participated in classes when he was able to afford them." Tr. 33. At the hearing, Plaintiff testified that after he was released from prison and following the chemo treatment, he tried to work as a waiter. Tr. 729. He testified that he had problems with memorizing the menu, he made mistakes, and he eventually stopped going into work. *Id*. Upon further questioning, Plaintiff affirmed that he had not been "let go" or fired by his employer, but he chose to stop showing up for work. Tr. 730. This appears to support the ALJ's finding. However, Plaintiff's last reported wages were in 2012, which predates the alleged onset. Tr. 846. Therefore, his ability to perform these tasks is not inconsistent with his allegations because he was not alleging disability simultaneously. Therefore, this reason does not arise to the clear and convincing standard.

The ALJ's second example was that Plaintiff could attend his court ordered classes without difficulty from psychological symptoms. Tr. 33. The record supports this finding. Tr. 1403 (On April 1, 2016 Plaintiff made arrangements for a hotel since attending the Father Engagement class prevented him from getting in line in time for a bed at a shelter); Tr. 1406 (On April 13, 2016, Plaintiff had completed two weeks of Father Engagement with 10 to go); Tr. 1409 (On April 26, 2016, Plaintiff reported regularly attending Father Engagement class); Tr. 1419 (Plaintiff was attending parenting classes without reported issues); Tr. 1426 (On July 27, 2016 he reported he was not attending the Father Engagement classes, but did not provide a reason); Tr. 1444 (In April of 2017 Plaintiff reported being unable to attend domestic violence class due to the cost); Tr. 1446 (On April 3, 2017 Plaintiff was attending outpatient rehab and attending Father Engagement classes, but was unable to afford the domestic violence class); Tr. 1447 (On May 22, 2017, Plaintiff reported he was losing parental rights over his child and could still not attend the domestic violence course due to the cost). Plaintiff's

unexplained reasons for not attending the parenting courses and eventually losing parental rights could support Dr. Haroian's opined limitations; however, the proffered reasons he could not attend his courses were usually financial in nature and he was able to resolve the non-financial limitations, such as getting a hotel room when attending classes prevented him from getting a shelter bed, demonstrates his psychological impairments were not preventing his attendance. Because the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Therefore, this portion of the ALJ's second reason for rejecting the opinion meets the clear and convincing standard.

The ALJ's third reason for rejecting Dr. Haroian's opinion, that it was predicated on inaccurate information from Plaintiff, is clear and convincing. The ALJ specifically pointed to Plaintiff's reports to Dr. Haroian that he experienced auditory hallucinations, yet this went unreported to all other providers. Tr. 33. At the evaluation, Plaintiff reported that "he sometimes hears voices, mostly the voices happen when he is in anxiety provoking situations, for example when he is in a social situation he will hear a voice telling him you got to get out of here." Tr. 921. However, Plaintiff did not report the presence of these hallucinations to any other providers in the record. Furthermore, Plaintiff failed to challenge this reason in his briefing. ECF No. 19 at 6-9. Therefore, he has waived any challenge to this reason. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). The Ninth Circuit explained the necessity for providing specific argument:

> The art of advocacy is not one of mystery. Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court. Particularly on appeal, we have held firm against considering arguments that are not briefed. But the term "brief" in the appellate context does not mean opaque nor is it an exercise in issue spotting. However much we may importune lawyers to be brief and to get to the

point, we have never suggested that they skip the substance of their argument in order to do so. It is no accident that the Federal Rules of Appellate Procedure require the opening brief to contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A). We require contentions to be accompanied by reasons.

*Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003).[2] Moreover, the Ninth Circuit has repeatedly admonished that the court will not "manufacture arguments for an appellant" and therefore will not consider claims that were not actually argued in appellant's opening brief. *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994). Because Plaintiff failed to provide adequate briefing, the court declines to consider this issue.

### B. Daniel Neims, Psy.D.

On September 10, 2014, Dr. Neims reviewed Dr. Haroian's opinion and agreed with Dr. Haroian's opined limitations. Tr. 934, 937 *compare* Tr. 92. The ALJ assigned the opinion "very little weight" for the same reasons he rejected Dr. Haroian's opinion. Since the ALJ did not commit harmful error in his treatment of Dr. Haroian's opinion, *see supra*, and Dr. Neims' opinion was premised solely on Dr. Haroian's evaluation, the ALJ did not err in rejecting his opinion.

### 4. Residual Functional Capacity Determination

Plaintiff argues that by the ALJ failing to include his skin impairments at step two, and by rejecting the opinions of Dr. Haroian and Dr. Neims the residual functional capacity determination is fatally flawed. ECF No. 19 at 12-14. This argument is premised on the ALJ erring at step two and in the weighing of the medical opinion evidence. Since the Court found no harmful error in either of these findings by the ALJ, this argument fails.

---

[2] Under the current version of the Federal Rules of Appellate Procedure, the appropriate citation would be to FED. R. APP. P. 28(a)(8)(A).

### 5. Substantial Evidence

Plaintiff argues that the ALJ's decision is contrary to the evidence in the record and lacks sufficient support. ECF No. 19 at 14. This argument is premised on the ALJ erring at step two and in the weighing of the medical opinion evidence. Since the Court found no harmful error in either of these findings by the ALJ, this argument also fails.

### CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED March 30, 2020.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE